STATE OF MAINE                              SUPERIOR COURT
KENNEBEC, SS.                               CIVIL ACTION
                                            DOCKET NO. AP-2017-021


MANNY SYLVIA,
            Petitioner

                                            **DECISION AND ORDER**

v.


MAINE DEPARTMENT OF
CORRECTIONS,
            Respondent.


## INTRODUCTION

The matter before the Court is an appeal by Manny Sylvia, an inmate at the

Maine State Prison, from a disciplinary proceeding that resulted in the imposition

of sanctions against him for the offense of "trafficking," a Class A violation. This

appeal has been brought in accordance with 5 M.R.S. §§11001-11008

(Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

As set out in the Disciplinary Hearing Report dated March 21, 2017 and

authored by Lt. Lidia Burnham, the facts are as follows:[1]

---

[1] All dates are in the year 2017. All the facts regarding events prior to March 21, 2017 are
contained in Certified Record ("C.R.") filed by Respondent at pages 2-3.

Petitioner "vehemently opposes" the description of events as set out in Respondent's brief. This
argument is without merit, since Respondent's brief sets out the facts nearly word-for-word as they
are stated in Lt. Burnham's report, only altered for ease of reading because, as Petitioner also
argued, the report contains of grammatical, spelling, and syntactic errors.

1

Between January 12 and February 2, fellow inmate Felix Gracia had multiple phone conversations with his sister, Carmen, regarding a transaction with "Ramon's nephew" where Carmen was to buy "50 chickens for $600" from Ramon's nephew. Lt. Burnham parenthetically interprets "50 chickens for $600" to mean 50 strips of Suboxone for $600. Fellow inmate Jose Ramon Quinones was also in phone contact with his nephew during this time, discussing a package and a woman in Connecticut, who Lt. Burnham parenthetically notes as Carmen.

At one point, Gracia spoke with Carmen and told her to call the "guy" and tell him to remove the tinfoil. According to Lt. Burhnam's report, Suboxone comes in individual packages with tinfoil on the inside.

The package arrived to Carmen on January 26, and the same day, Gracia called Jose Santiago and discussed arrangements to pick "it" up. Gracia also asked Carmen to open the packages and count "them." She said she only received 45, and Gracia was upset because he paid $600 for 50. She told Gracia on February 2 that when the "guy," parenthetically noted as Santiago, showed up at her house, she gave him 50.

On February 4, Petitioner spoke with Santiago and asked if "he still has it" or if it "is gone already." Santiago said that he still had them.

On February 6, Gracia called Santiago, who told him that Petitioner was concerned about "the other guy." In response, Gracia said that "Sylvia is just

2

sleeping and expecting everything to get to him without paying attention."[2] Santiago said he would speak with Petitioner. On February 8, Gracia spoke with Santiago, who gave him a new phone number just for him and Petitioner.

No Suboxone had arrived at the prison by the time Lt. Burnham's report was submitted on March 21.

On March 21, Lt. Burnham's report was approved and forwarded for investigation. (C.R. 4). An investigation was opened on March 22, 2017. (C.R. 4). Petitioner was read the report and charged with a trafficking violation. (C.R. 3, 4). Petitioner did not make a statement in regards to the opening of the investigation. (C.R. 4). On March 27, Petitioner received notice of the hearing scheduled for March 30 and indicated that he did not wish to call witnesses at the hearing. (C.R. 1).

Petitioner's appeal to MDOC states that he requested telephonic, forensic, and physical evidence but the hearing officer (Capt. Abbott) failed to acknowledge the request. (C.R. 10). Respondent claims that no forensic or physical evidence exists. (Resp.'s Br. 8). Since the request was not acknowledged, no reason was given for the denial of the phone records.

In the Summary of Hearing, the space under the heading "name of any witnesses and summary of testimony and any exhibits presented" is blank. (C.R. 7).

---

[2] This is a quotation from Lt. Burnham's report, not a quotation of Gracia's words.

3

This would appear to indicate that no evidence was presented at the hearing. Based on the findings of the hearing officer, however, it is apparent that he did, in fact, consider some evidence at the hearing. (C.R. 8).

The hearing officer's findings were as follows:

> "The prisoner is guilty based on the report[.] I was briefed by the S.I.I. team and I do believe that it is more probable that this prisoner was attempting to introduce drugs in to [sic] the facility." (C.R. 7).

Petitioner appealed to the Chief Administrative Officer or designee on April 3.. (C.R. 10). The guilty finding was affirmed on April 7. (C.R. 11).

## DISCUSSION

Title 34-A M.R.S. §3032(1) mandates that the Commissioner of the Department of Corrections adopt rules governing the discipline of inmates that will ensure a "high standard of fairness and equity." Section 3032(6) requires that a "client" (inmate) is entitled to an "impartial hearing" before being subjected to punishment. To implement that right to an impartial hearing, the Legislature has articulated a number of specific right which a client must receive.

In compliance with the legislative directive, the Commissioner gas, in fact, adopted rules governing the way disciplinary hearing for inmates are to be conducted An inmate who is charged with a violation of the disciplinary code is entitled, among other things, to: (1) have the hearing officer's finding of guilt or innocence based only on evidence presented at the disciplinary hearing; (2) be allowed access to

4

evidence, which shall not be unreasonably withheld or restricted, and if withheld or limited, a reason for such withholding or limitation shall be given, and; (3) be provided with a summary of any confidential information relied upon by the hearing officer in making his finding of guilt or innocence. MDOC Policy 20.1, Procs. C (9)-(13). The court focuses on whether these aspects of the disciplinary hearing policies and procedures were complied with, and whether there was substantial evidence in the administrative record to support the hearing officer's findings.

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v. Board of Environmental Protection*, 2001 ME 18, ¶ 13, 989 A.2d 1228 (emphasis added). The question is whether the record reviewed by the Hearing Officer "contains competent and substantial evidence that supports" his findings and whether he correctly applied the law to the facts. *Nattress v. Land Use Regulation Comm'n.*, 600 A.2d 391, 394 (Me. 1991). The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v. Maine Employment Security Comm'n.*, 431 A.2d 637, 640 (Me. 1981).

5

"Administrative agencies are bound by their own rules of procedure promulgated pursuant to legislative grant of power, which rules have the force of law." *Russell v. Duchess Footwear*, 487 A.2d 256, 259-60 (Me. 1985) (Dufresne, A.R.J. concurring); *see also FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 549 ( 2009) ("Moreover, an agency must act consistently. The agency must follow its own rules").

The Court has reviewed the entire record submitted by Respondent MDOC, and concludes that the hearing officer's finding of guilt against this Petitioner is not supported by substantial evidence in the record.

Lt. Burnham's report supports a finding that Petitioner spoke with Santiago, the man to whom Carmen delivered the items, and asked if he still had "it." The remainder of the evidence against the Petitioner is derived from a phone conversation between Gracia and Santiago, in which they discussed that Petitioner had concerns and was "expecting everything to get to him without paying attention." Given that this is the only evidence regarding Petitioner in the record, his connection to the alleged trafficking scheme is tenuous.[3] The hearing officer even

---

[3] MDOC policy states that a "Trafficking" violation is as follows: "Trafficking of a drug, regardless of whether or not prescribed to the prisoner, or possession or use of a prescription drug not prescribed to the prisoner by the facility healthcare staff, or possession or use of a non-prescribed scheduled drug of the W, X, Y classification, or related paraphernalia as defined by 17-A M.R.S.A. Trafficking, possession or use of a non-prescribed Schedule Z substance or related paraphernalia (marijuana or its derivatives and paraphernalia related to its use)." MDOC Policy 20.1, Proc. E. Suboxone (buprenorphine) is a Schedule W drug. 17-A M.R.S. § 1102(1)(I). Note also that

6

acknowledged that there was only one line in the report concerning Petitioner. (C.R. 7). These scarce facts surrounding Petitioner may support a suspicion that he was somehow involved in illicit activity with others, but they do not support a finding "more probable than not" that he solicited Gracia, helped plan the trafficking, attempted to traffick himself, or provided assistance to Gracia. Policy 20.1, Proc C(13).

Not only is the hearing officer's decision unsupported by substantial evidence, there are also parts of the record that the court finds the hearing officer relied upon, but were not made available for the court's review in this Rule 80C appeal. In particular, it is apparent that in making his findings, the hearing officer relied upon a briefing by the S.I.I. (Security and Interior Investigations) unit, which may have included recordings of telephone conversations, and potentially confidential information, none of which was made available to Petitioner at the time of hearing, and none of which has been included, or even summarized, in the certified record presented to the court for review on appeal.

Respondent contends that the hearing officer's decision was based only upon Lt. Burnham's report. A complete reading of the hearing officer's findings, however, reveals that he also relied upon a prior, *ex parte* briefing by the S.I.I. unit.

---

planning, attempt, participation as an accessory, or solicitation of another prisoner are all included in the violation. MDOC Policy 20.1, Proc. E.

7

MDOC Policy 20.1, Proc. C (13) states that at the disciplinary hearing, the hearing officer's "finding of guilt or innocence must rest solely upon evidence produced at the hearing." According to the Summary of Hearing, no exhibits or witnesses were presented. Yet, the parties apparently agree that: (1) Lt. Burhnam's report was presented as evidence at the Hearing, and (2) the information presented to the hearing officer by S.I.I. in the briefing was not disclosed at the Hearing. This appears to be in direct violation of the MDOC policy by having Petitioner's guilt decided based on evidence that was not disclosed to him, and against which he could therefore not possibly defend. Any information obtained at the S.I.I. briefing was also not provided to the Court as part of the certified record, or even in summarized form.

If that S.I.I. briefing contained confidential information, the hearing officer cannot automatically deny Petitioner access to it. MDOC Policy 20.1, Procs. C (11) & (12) require that when confidential information is necessary to support a finding of guilt, the identity of the informant shall be removed and a summary of the remainder of the confidential information shall be presented at the hearing. Thus, not only was the information from the S.I.I. briefing required to be disclosed to Petitioner because the Hearing Officer relied upon it, if that briefing included any confidential information that he relied upon in making his guilty finding, the MDOC

8

policy required that a summary be provided to the Petitioner.[4] It is unclear whether confidential information was contained in the S.I.I. briefing, or whether that information was necessary to support the Hearing Officer's finding of guilt, since the court cannot review material that was never included in the administrative record but was relied upon by the hearing officer.

Based on the administrative record that is available for judicial review, the court concludes that the hearing officer's finding of guilty against this Petitioner was not supported by substantial evidence in the record.

## CONCLUSION

The entry is:

The Petition for Judicial Review is GRANTED and Disciplinary Matter No. MSP-2017-0477 is REVERSED and the matter is REMANDED to the Respondent with instructions that it vacate the finding of guilt against the Petitioner.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: December 20, 2017

William R. Stokes
Justice, Maine Superior Court

---

[4] Petitioner believes that asterisks in Lt. Burnham's report cross-reference confidential information. There is no evidence of this, and nowhere is her use of asterisks explained. Upon reading the report, it is likely that the asterisks indicate the start of a new paragraph, date, or event.